## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

_____X

EVANGELINE BYARS, TODD BROWN and
DONNA JONES
                Plaintiffs,

    v.

TRANSPORT WORKERS UNION OF
AMERICA, a Labor Organization, TRANSPORT
WORKERS UNION, LOCAL 100, a Labor
Organization, JOHN SAMUELSEN, ANTHONY
UTANO and BARBARA DEINHARDT

                Defendants.

_____X

**CIVIL ACTION NO: <u>21-cv-5219</u>**

**VERIFIED COMPLAINT FOR
PRELIMINARY INJUNCTION AND
TEMPORARY RESTRAINING
ORDER**

**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action pursuant to Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185 (LMRA). One of the primary goals of Congress in enacting 301(a) was concerned with "unions be[ing] made legally accountable for agreements into which they entered among themselves, an objective that itself would further stability among labor organizations. Therefore, § 301(a) provided *federal* jurisdiction for enforcement of contracts made by labor organizations… Surely Congress could conclude that the enforcement of the terms of union constitutions — documents that prescribe the legal relationship and the rights and obligations between the parent and affiliated locals — would contribute to the achievement of labor stability." *Plumbers Pipefitters v. Plumbers Pipefitters*, 452 U.S. 615, 624 (1981). Thus, Union members have a private right to hold their union accountable for the enforcement and interpretation of their Constitutions.

This action arises out of Defendants' unreasonable interpretation and application of their Union Constitution and Bylaws during elections for internal union office by the over 40,000 members of Local 100 of the Transport Workers Union ("Local 100") in New York City.

1

Defendants have taken steps to apply the Local Union's Bylaws to this general election that its current procedures are wholly inconsistent with the plain meaning of the Bylaws. Moreover, Defendants are misinterpreting Defendant Transport Workers Union of America ("TWU") to improperly hold Plaintiffs in bad standing for non payment of dues that prohibit them from running for higher union office based on patently unreasonable interpretations of the TWU Constitution. Temporary and Preliminary Injunctive relief is requested because a major deadline for eligible candidates to begin circulating nominating petitions begins today, on September 20, 2021. Yesterday afternoon, Defendant Local 100 sent notice to Plaintiffs that it will permit them to circulate nominating petitions, but not concede to their eligibility to have continuous good standing. Essentially, Defendants are producing sham petitions for Plaintiffs to prevent this courts intervention. Absent temporary and preliminary injunctive relief Plaintiffs' rights to participate in their union according to the TWU constitution and Local 100 Bylaws will be violated and they will be irreparably harmed.

Plaintiffs are members of Defendant unions that have collectively breached their contract with them by unreasonably interpreting the Constitution and by doing so is in violation of federal law. Defendants sought to change the plain meaning of the Union's Constitution 10 weeks before the nominations of internal union election of officer so as to create an unequal right that disenfranchises its sick, injured and ill membership to prevent union members the rights to nominate candidates, vote for candidates of their choice, attend union meetings and to participate in union business. Defendants furthered its unreasonable interpretation to hold that members who had been disciplined by the employer with unpaid suspensions also lost their "good standing" and ability to restore such standing after receiving a 30 day notice to cure any dues arrearage. Good standing refers to payment of Union dues. Plaintiffs do not challenge this requirement for eligibility. Rather, Plaintiffs challenge the new and patently unreasonable interpretations of various

Constitutional provisions by Defendants through their agents. These new interpretations represent a break with decades of interpretations which implemented these provisions according to their plain meanings. These new so-called interpretations act to deprive members of their continuous good standing.

Defendant launched an unlawful constitution interpretation effort focused on candidate suppression by holding Plaintiffs ineligible to run by unreasonably expanding the definition of "bad standing". To do this, Defendants collectively eliminated constitutional language from their collective interpretation which protects union members from falling into "bad standing" by promptly paying dues after receiving a 30 day notice to cure any deficiency in dues payment. Moreover, the Local 100 Bylaws set formal rules for how general elections are conducted. Local 100 has departed from these rules in order to ensure that its incumbent officers are insulated from any challenge. Essentially Defendants are refusing to apply the clear language of the Constitution and Bylaws, a contract that they have entered into with their membership to prevent members from participating in their Union.

Moreover, Defendants actions to prevent disciplined employees from being able to restore their "good standing" after being provided with a 30 day cure letter means that Defendants are allowing the employer to dictate which union members can maintain good standing so as to be able to participate in activities of the union, including supporting internal officer candidates.

Defendants claim that their interpretation of the Constitution to hold sick, laid off, and ill members in "bad standing" is necessary because Plaintiffs have lost the availability of "dues check-off". Defendants interpret the Constitution using a supposed theory that Plaintiffs have undone their dues check off authorization with their employer when they are sick or injured or disciplined by the employer, but that is a sham basis for the Constitutional interpretation as dues check-off for public sector employees in New York City is a legislative requirement under the New York State

Public Employees' Fair Employment Act, commonly known as the Taylor Law, codified at §208.1 of the Civil Service Law: "A public employer shall extend to an employee organization certified or recognized pursuant to this article the following rights: … b) to membership dues deduction, upon presentation of dues deduction authorization cards signed by individual employees."  The real basis for this interpretation is to shield the current union leadership from a fair election in violation of the LMRA and other federal laws.

**PARTIES**

1.     Plaintiff Evangeline Byars ("Byars") has been a member of Transport Workers Union, Local 100 ("Local 100" or "Union") for over 5 years residing at 2832 West 23rd Street, Apt. 9E, Brooklyn, NY 11224.

2.     Plaintiff Todd Brown ("Brown") has been a member of Transport Workers Union, Local 100 ("Local 100" or "Union") for over 8 years residing at 485 First Avenue, Apartment 7B, New York, NY 10016.

3.     Plaintiff Donna Jones ("Jones") has been a member of Transport Workers Union, Local 100 ("Local 100" or "Union") for over 22 years residing at 14 Floral Drive, Amityville, NY 11701.

4.     Defendant Transport Workers Union of America ("TWU") is a labor organization that acts as a parent union to Transport Workers Union Local 100 ("Local 100").  TWU is located at 1220 19th Street NW, Washington DC 20036.

5.     Defendant Local 100 is a labor organization and local union of TWU.  Local 100 is located at 195 Montague Street, Brooklyn, NY 11201.

6.     Defendant John Samuelsen ("Samuelsen") is President of TWU for at least the last 5 years, immediately prior to that he was the President of Local 100 for at least 8 years.

7.      Defendant Anthony Utano ("Utano") is President of Local 100 for at least the last 5 years, having first been appointed by Samuelsen as his successor.

8.      Defendant Barbara Deinhardt ("Deinhardt') has been acting as the Neutral Monitor for Local 100 elections for the last three election cycles.  At least for the 2021 election cycle, Deinhardt's role is *ultra vires*, as she was never appointed to her role pursuant to the Local 100 Bylaws.  The stated role of the neutral monitor is to find facts and apply the law. Plaintiffs allege Deinhardt did not do this, but has rather been upholding the patently unreasonable interpretations of the TWU Constitution given by Local 100 President Utano, and confirmed by International Union President Samuelson in order to deprive Plaintiffs of their right to run for union office.

## JURISDICTION AND VENUE

9.       This Court has jurisdiction pursuant to 28 USC § 1331 as this is a civil action arising under the Constitution and laws of the United States and other statutes, as well as under any other federal statute or law that will assist Plaintiffs in the prosecution of the defendants.

10.      Venue is proper in the Eastern District of New York under 28 USC § 1391(b) as Local 100 maintains it business address in this District and all events and omissions giving rise to the claims herein occurred in this District.

## BACKGROUND

11.      Local 100 operates a "Dues Office" that only collects payments in person ie., there is no method to pay dues online, via email or over the phone during all times herein.  (See Exhibit 13) The one employee who can provide dues information is in person only one time per week during all times herein.

## Plaintiff Members of the Local Union Are Stricken
## With Sickness, Illness, Injury and Discipline

**PLAINTIFF EVANGELINE BYARS**

12.     Upon her hire in 2016, Plaintiff Byars provided an automatic dues check off authorization to the New York City Transit Authority ("Transit") as part of her onboarding. Pursuant to the Taylor Law, this automatic dues check off authorization requires Transit to remit dues to Local 100.  At no time has Plaintiff Byars ever revoked such automatic dues authorization.

13.     On or about March 21, 2020, Plaintiff Byars became positive with COVID-19 because she works as an essential worker in the title of Train Operator for Transit.  COVID-19 forced her to recover in quarantine for approximately a month.

14.     Plaintiff Byars filed a workers compensation claim for her injury on duty upon her return to work.  Due to the natural delay caused by COVID-19 in public sector agencies, her application for workers compensation was not approved until November 2020.

15.     Under the Collective Bargaining Agreement between Local 100 and Transit, Plaintiff Byars was entitled to and received differential pay in November 2020.  Differential pay are wages she receives on top of her workers compensation payment so as to equal her regular hourly wage.

16.     In November 2020 she receives both her differential pay and her workers compensation for her March 2020 injury on duty resulting from her COVID-19 infection and her dues are remitted.

17.     On January 26, 2021, Plaintiff Byars experiences symptoms of long COVID including extreme fatigue, shortness of breath and body aches and applied under a recurrence with the Transit's, Workers' Compensation Unit.  She was absent with this illness and injury from January 26, 2021 to February 24, 2021.  (See Ex. 6a (internal Ex. 2.5))

18.     On September 1, 2021 Plaintiff Byars enquired with the Transit Workers Compensation Unit to get information on the status of her application.  To date, she has only been told that it is in process.  (See Ex. 10)

19.    On April 28, 2021 after getting conflicting information from Arthur Schwartz, a self appointed "counsel" to the elections committee (also acting *ultra* vires), and from the incumbent Financial Secretary regarding seeking a "waiver/exoneration" of the dues for this missed pay period, Plaintiff Byars paid the dues owed from the missed pay check from the first pay period in February 2021.  (See Exhibit 6a (internal Exhibits 4-6)) At no time was Plaintiff Byars sent a letter giving her 30 days to pay the dues missed in January-February 2021 pursuant to Article XIII (3).

20.    At no time was a 30 day cure letter sent to Plaintiff Byars pursuant to Article XIII (3).

21.    On August 30, 2021 Plaintiff Byars receives an email stating she had lost her good standing for failure to pay dues for a February 13, 2021 pay period while she was recovering from her recurrence due to her COVID-19 and that she had failed to ask for an "exoneration" of the dues Byars had paid and Local 100 accepted on April 28, 2021.  (See Ex. 5a)

22.    On September 12, 2021, Defendant Deinhardt determines that Plaintiff Byars has lost her continuous good standing under Article XVII(4)(a), Samuelsen's July 1, 2021 letter, her own precedence improperly interpreting Article XIII(3) of the TWU Constitution, the Elections Rules, Local 100 Bylaws and applicable law.  (See Ex. 7a)

**PLAINTIFF TODD BROWN**

23.    Upon his hire in 2013 Plaintiff Brown provided an automatic dues check off authorization to Transit as part of his onboarding.  This automatic dues check-off authorization requires Transit to remit dues to Local 100 as per the Taylor Law.  At no time has Plaintiff Brown ever withdrawn his authorization for such automatic dues check-off authorization.  At no time since 2015 has the right of the Union to receive dues through check-off been revoked under the Taylor Law.

24.    On December 28, 2020, Plaintiff Brown was subjected to a disciplinary suspension that lasted through to May 2021.  (See Ex. 6b)

25.     Defendant Samuelsen made a number of statements, tweets and a video taped presentation before the MTA Board that the discipline that Plaintiff Brown was suffering under was due to racism against Black and Brown workers at Transit.  (See Ex. 6b (internal Ex. 1-3))

26.     On June 29, 2021, Plaintiff Brown had paid all of his dues arrearages and Local 100 accepted them.  He had never been sent the 30 days cure letter as per Article XIII (3).  (See Ex. 6b)

27.     On September 10, 2021, plaintiff Brown received his notice from Local 100 that he had lost his good standing under Article XIII (3,4) and Article XV(3) for the time that he had been on employer imposed disciplinary suspension.  (See Ex. 5b)

28.     On September 14, 2021, after permitting Plaintiff Brown to make an oral statement, Local 100 issued a second determination that Plaintiff Brown had lost his good standing during his disciplinary suspension because he did not ask to be "exonerated".  (See Ex. 11)

**PLAINTIFF DONNA JONES**

29.     Upon her hire in September 1999 Plaintiff Jones provided an automatic dues check off authorization to Transit as part of her onboarding.  This automatic dues check off authorization requires Transit to remit dues to Local 100.  At no time has Plaintiff Jones ever revoked such automatic dues authorization.

30.     On May 11, 2021 Plaintiff Jones' foot was injured while working as a Bus Operator. She applied for Workers' Compensation on the same day, May 11, 2021. She was granted her workers compensation three weeks after her injury until July 28, 2021.

31.     Due to a diabetic health condition, Plaintiff Jones could not return back to work for Transit until September 1, 2021.  In the meantime, from July 28, 2021 to September 1, 2021 she received disability.

32.     Prior to this injury, Plaintiff Jones, on August 11, 2020, had put on file an authorization form authorizing Transit to deduct "double dues" to pay any dues arrearage because

of any illness or short-term disability beginning in March of 2020.  This double-dues form was approved and Plaintiff never revoked it.  Thus, Transit is authorized by Plaintiff Jones to deduct double dues to cover the period of July 28, 2021 to September 1, 2021.  (See Ex. 8)

33.     On August 2, 2021 and on September 17, 2021 Plaintiff Jones paid to Defendant Local 100 and Local 100 accepted her dues payment to cover her absences while she was injured.  (See Ex. 11a)

34.     On September 15, 2021 Local 100 issued Plaintiff Jones a notice that she had lost her good standing for not paying dues while she had been recovering from her injuries under Article XIII(3,4) and Article XV(3).  (See Ex. 5c)

35.     On September 18, 2021 after permitting Plaintiff Jones to make an oral statement, Local 100 issued to Plaintiff Jones a determination that "You not only haven't been in good standing for one continuous year, at this point you haven't been in good standing for more than one day!" Local 100 reasons that Plaintiff Jones never asked for an exoneration and the failure of her employer to follow the double dues places her in bad standing in 2020.  (See Ex. 11a)

## The Local Union Violates the Local 100 Bylaws

## In Developing Its Election Procedures

36.     Defendants TWU and Local 100 operate under an International Constitution and Local Bylaws which act as a contract between the Union administration and the membership.  (See Ex.1)

37.     On June 10, 2021, at an Executive Board meeting of Local 100 attended by Plaintiff Byars, Arthur Schwartz ("Schwartz"), a lawyer, claims that he is Counsel for the Elections Committee *ultra vires,* as no such position exists under the Local 100 Bylaws.  (See Ex. 1)

38.     On June 10, 2021, at an Executive Board meeting of Local 100, Aquilino Castro ("Castro"), a retired Local 100 member, is introduced by Schwartz as the "Elections Chairman".  At

no time did the Executive Board act to appoint Castro as an Elections Committee Chairman, nor does it act to designate the other two members of the Elections Committee, in violation of Article XI(b) of the Local 100 Bylaws.  (See Ex. 1)

39.    On June 10, 2021, Schwartz presented a draft copy of the "2021 Election Rules" to the Executive Board that already designates Defendant Deinhardt as the "Neutral Monitor" to the Elections Committee.  At no time on June 10, 2021, or at anytime thereafter was Defendant Deinhardt designated by the Executive Board of Local 100 to act as the Neutral Monitor for the 2021 Officers Election in violation of Article XI(f) of the Local 100 Bylaws.  (See Ex. 1)

40.    Pursuant to Article XI(b) once properly appointed by the Executive Board, "[t]he Elections Committee shall promptly meet and draw up proposed rules and regulations to govern nominations and elections and shall report back to a meeting of the Executive Board no later than September 15."  This never happened.  Instead Schwartz, acting without authority, brought the Election Rules with him to the June 10, 2021 Executive Board meeting.  (See Ex. 1)

41.    On June 10, 2021, Schwartz explains that TWU has already "affirmed" the understanding of the interplay between Article XIII and Article XVII.

### The Local Union Asks the International Union to
### Justify Non Compliance with its Constitution

42.    Over the past few election cycles Defendant Samuelson with the assistance of Schwartz and Defendant Deinhardt, began a new interpretation of the TWU Constitution without given notice to the members or seeking to make any changes in the wording of the constitutional provisions at the Union's Constitutional Convention.  (See Ex. 6a (Affidavit of Roger Toussaint and Affidavit of James Mitchell)).

43.    Beginning in 2015 and more often in 2018, Defendant Deinhardt began following a new interpretation of the Constitutional provisions—which were expressly designed to protect a

member's continuous good standing when they have authorized dues check-off—that virtually nullified these provisions, particularly the third and fourth sentences of Article XIII section 3.  (See Ex. 14)

44.     Shortly after, the June 10, 2021 Executive Board meeting with Schwartz where the Election Rules were adopted, Defendant Utano, President of Local 100, writes to Defendant Samuelsen, "[a]s Local 100 approaches its Officers Elections", asking whether under his interpretation of Article XIII and Article XVII he can hold all members who were ill, injured or laid off in bad standing and thus ineligible to participate in Union activities, including voting for and running for office which requires good standing.  Utano reasons that the Constitution states that if the Local Union's members had not paid their dues by the fifteenth day of the month following their absence due to illness he can hold them in bad standing unless they properly ask for an exoneration. Utano also seeks to hold all members on unpaid disciplinary suspension in bad standing if their dues were not paid. (See Ex.2)

45.     On July 1, 2021, Samuelsen responds that he interprets Article XIII Section 3 to mean that if any member does not pay their dues by the first day or the fifteenth day of a calendar month they "shall be in bad standing".  He further opines, that Section 3's savings clause is not available to the Local's membership where dues check off is unavailable.  He fails to explain what the meaning of "unavailable" is within the context of the Taylor Law which requires Transit to remit dues to Local 100.  (See Ex.3)

46.     Rather than read the plain language of Article XIII, Section 3 as written, Samuelsen decides to omit the savings clause from his interpretation.  The clear language of the Constitution states: "Any member to whom dues check-off is available and who signs and delivers to the Local Financial Secretary-Treasurer, or other authorized person, a check-off authorization shall be considered in good standing regardless of when in a particular month the employer deducts his/her

dues for such month or when the employer pays his/her dues over to the Union.  Where for any reason the dues of a member who pays his/her dues by checkoff authorization are not checked off by the employer for any month or months, said member shall remain in good standing until thirty days after the mailing to him/her by registered mail of a notice informing him/her of his/her indebtedness.  Failure to pay within said thirty day period shall cause said member to become in bad standing."  (See Ex. 3)

47.    On July 29, 2021, Local 100 member Jamel Nicholas ("Nicholas"), running in opposition to the incumbent officers, unsatisfied with Defendant Samuelsen's interpretation of the Constitution, files a protest to appeal under Article V of the Constitution to Defendant Samuelsen and copied Defendant Deinhardt, Plaintiff Byars, and Attorney Schwartz (self appointed "Counsel to the Elections Committee").  To date, Defendant Samuelsen and Defendant Union TWU have not responded to Local 100 member Nicholas' appeal.  Defendant Deinhardt and Schwartz have also been silently complicit by ignoring Nicholas' Article V appeal of Samuelsen's interpretation, rather relying on it to take away the good standing of members of Local 100. (See Ex. 4)

48.    On September 15, 2021, undersigned counsel followed up this protest by requesting that they be provided information on when the International Executive Council will take up the protest. (See Ex.4)

49.    There has been no response to Mr. Nicholas or undersigned counsel as of yet.

**The Elections Committee, Schwartz And the Neutral Monitor**

**Begin Designating Union Members in Bad Standing Without Authority**

**and in Violation of the TWU Constitution**

50.    On August 30, 2021, Chairman of the Elections Committee, Aquilino Castro sent an email notification to Plaintiff Byars informing her that, while the Elections Committee earlier had told her that she was in good standing to be eligible to run for office, she actually no longer was and

that she should seek an exoneration.  (See Ex. 5a)

51.     Byars had paid all of her dues by April 28, 2021 so an Article XVII(3) exoneration is not applicable.

52.     The Elections Committee, Schwartz and Defendant Deinhardt found that Plaintiff Byars was in bad standing because she had not paid her dues by the fifteenth of the month following her injury.  The findings of Defendant Deinhardt holding Plaintiff Byars ineligible were made on September 12, 2021.  (See Ex.7a)  On September 14, 2021, Plaintiff Byars appealed this ruling to the next step in the internal appeals process.  (See Ex. 15)

53.     Plaintiff Byars had never been provided with any letter from Local 100 giving her 30 days to remit her dues before falling into bad standing.  In fact, she had already remitted all her dues even before her recurrence differential application had been processed by Transit's Workers Compensation Unit.  (See Ex. 10)

54.     On September 10, 2021 Chairman of the Elections Committee, Aquilino Castro sent an email notification to Plaintiff Brown informing him that he had lost his good standing to be eligible to run for office under Article XIII(3,4) and under Article XV(3).  (See Ex. 5b)  However, at no point in time did Defendant Local 100 provide him with the required 30 day cure letter written in Article XIII(3).  Plaintiff Brown had paid all arrearages three months earlier on June 29, 2021. He could not have been placed into bad standing based on the TWU Constitution.

55.     On September 15, 2021 Chairman of the Elections Committee, Aquilino Castro sent an email notification to Plaintiff Jones that she had lost her good standing to be eligible to run for office under Article XIII(3,4) and under Article XV(3).  (See Ex. 5c) However, at no point in time did Defendant Local 100 provide her with the 30 day cure letter as per Article XIII(3) referred to in the letter she received from the elections committee.

56.     Inexplicably on September 19, 2021, the Elections Committee issues a letter dated

13

September 17, 2021 to Plaintiff Byars that it will issue her nomination petitions today, but that it will be a sham nomination petition.  The Elections Committee warns her "You are proceeding as you are at your own risk, and at the risk of the other members on your purported slate.  I suggest that you circulate this memo to your slate mates."  (See Ex.12)

57.     Not having heeded the threat from hours earlier in the early morning of September 20, 2021 Mr. Schwartz again stated: "But you take a big risk circulating petitions with your candidacy in issue. If you do not win your appeal, or in your threatened lawsuit, there will be no Stronger Together Slate". (See Ex 16).

## FIRST CAUSE OF ACTION

## SECTION 301 OF THE LMRA FOR
## ENFORCEMENT OF LABOR ORGANIZATION'S CONSTITUTION

58.     Plaintiffs repeat the allegations contained in all the paragraphs above.

59.     Under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.   Union members have standing to enforce the terms of their Union constitutions and bylaws as contracts between labor organizations and their membership.

60.     Defendants conduct, including the failure to apply the clear language of the TWU Constitution and Local 100 Bylaws to unreasonably hold members in bad standing and to compose an Elections Committee, Counsel to the Elections Committee, Neutral Monitor and Election Rules without proper authority from Local 100's Bylaws all violate the Union's Constitution and Bylaws.

   **WHEREFORE,** plaintiffs respectfully requests that the Court:

A.     Grant a preliminary injunction and temporary restraining order preventing defendant from distributing nomination petitions on September 20, 2021 and preserving the status quo until a determination can be made about the impropriety of Local 100's election process and interpretation of its Constitution.

B.     Grant Plaintiffs' attorney's fees, costs.

C.     Such other and further relief as this Court deems just and proper.


Dated:     New York, New York
           September 20, 2021



                                        Respectfully submitted,



                                        Retu R. Singla
                                        Law Office of Retu Singla,
                                        A Working Peoples Law Center
                                        11 Broadway
                                        Suite 615
                                        New York, NY 10004
                                        (646) 228-4729
                                        rsingla@workingpeopleslaw.com



                                        Jeanne Mirer
                                        Mirer, Mazzocchi & Julien PLLC
                                        1 Whitehall Street, 16th Floor
                                        New York, New York 1004
                                        (212) 231-2235
                                        jmirer@mmsjlaw.com
                                        Attorneys for Plaintiffs

15